## PEOPLE v. BIRCHAM.

A judgment entered on the forfeiture of a recognizance, is the property of the State, and the Legislature may release the same in such form and on such conditions as it thinks proper to prescribe.

It was the intention of the Legislature, by the twenty-fifth section of the Act creating a Board of Supervisors throughout this State, to transfer from the Courts of Sessions to the Boards of Supervisors, the general and special powers and duties of a civil character, which had before the passage of that Act, been vested in such Court.

It was not the design, in this manner, to repeal any law, general or special, before existing; but as, under the decision of Burgoyne v. The Supervisors, (in 5 Cal.) a question of the constitutionality of those laws which conferred duties and powers, not of criminal cognizance, was made, the Legislature meant to remove the difficulty by transferring all these functions to the Boards of Supervisors.

The Legislature, in the passage of a law, may refer to an Act unconstitutional in itself, to indicate its will in respect to a constitutional purpose. Where power has been misplaced by the Legislature, and thus its act become unconstitutional and void,

People *v.* Bircham.

it may, by the passage of a constitutional law, transfer such powers to another tribunal, by reference to such act.

The fact that a District Attorney has or is entitled to a percentage on a judgment in favor of the State, will not prevent the Legislature from the passage of a law releasing the judgment.

The record of the proceedings of a Board of Supervisors under their seal, is *prima facie* evidence of such proceedings.

APPEAL from the Eleventh District, County of El Dorado.

The facts of this case, as detailed by the opinion of the Court, are as follows :

Bircham entered into a recognizance, with sureties, to appear and answer the charge of manslaughter. Afterwards an indictment was found against him for this offense. On the twenty-ninth of January, 1853, the defendant was called in the District Court, and not appearing, his undertaking was declared forfeited. Subsequently suit was brought against the defendant and his sureties on this undertaking, and on the sixteenth of May, 1853, judgment rendered by default. Bircham appeared after this, and was tried and acquitted. On the twenty-sixth of May, the Legislature passed "An Act for the relief of Bircham and his sureties." This Act is found in the pamphlet Acts of that year, (p. 178) and is as follows : " The Court of Sessions of El Dorado County are hereby authorized to release John G. Bircham and his sureties, from liability upon any recognizance or obligation entered by him or them, for the appearance of said Bircham before said Court, on a charge of manslaughter, and upon any judgment obtained, or to be obtained, on said recognizance or obligation." The Court of Sessions took no action under this statute. The Board of Supervisors, however, in November, 1856, passed an order releasing the judgment, and ordering return of the execution. The District Court, in December, 1856, on motion, set aside the judgment, and ordered a return of the execution which had been issued on the judgment ; from which order the People appealed to this Court.

*Attorney General* for Appellant.

" 1. That the Board of Supervisors had no jurisdiction in the premises, and acted without authority of law."

We are told that the power conferred upon the Court of Sessions to

release Bircham, *et al.*, was transferred to the Board of Supervisors, by the section 33-34.

To which we answer: *First*, that the section quoted was only designed to confer upon Boards of Supervisors such general powers as had been exercised by Courts of Sessions by virtue of general laws, and not to cover such special powers as had been conferred by special acts upon particular and isolated Boards. This act belonged to the latter class.

*Secondly*, the Act, when it attempted to confer unconstitutional powers upon the Court of Sessions, became and was a dead letter. It was absolutely void, and being *void*, could not be subsequently revived. See Phelan *v*. Supervisors, &c.

The spirit and intention of the twenty-fifth section of the fourth article of the State Constitution, would forbid the passage of an Act like this, which attempts by one general sweep to confer upon one tribunal the powers and duties named and set forth in many Acts, running through a series of years, which have been attempted to be exercised by another. Each new Act should embrace within itself all powers, duties and rights it is intended to confer, and its "title" should clearly indicate the contents of the body.

2. The order with or without authority of law is void, because it divests vested rights of the then District Attorney, who prosecuted to final judgment, caused an execution to be issued, &c., &c.

It is maintained that an Attorney has no lien upon a judgment, and the case of *ex parte* Kyle (1 Cal. Rep., 331) is cited, but we apprehend the case does not apply.

*John Hume*, for Respondent.

The first question is as to whether the Board of Supervisors had any authority to make the order.

The debt due upon this undertaking was the property of the State of California, and belonged to the general fund, if paid in. See Codified Laws, page 86, section 4; also same section in Wood's Digest, art. 333, sec. 4.

The Legislature of this State have the sole and exclusive control of all moneys belonging to the general fund, and may dispose of such

fund as in their discretion may be deemed proper; so that heretofore they have repeatedly paid out money out of such fund for charity and other purposes, which were not legal claims against the State. The Legislature had then the right to release this recognizance and judgment, just as much as if such right lodged in a private creditor.

If this view is correct, then it seems that the Act of March 6th, 1854, (see statutes of 1854, page 178) was and is of itself a complete relinquishment of all claim of the State against the parties named in that Act. The suit was in the name of the People; the People were the only creditors, and the Legislature, who alone had the control of the matter, authorized a certain Court or tribunal to satisfy the judgment and make a release. The Legislature might have authorized any individual or officer to perform the same ministerial act, and it would seem as though it would make no difference whether such release was ever actually made of record or not, as the only creditor had directed or authorized it to be done.

On the twentieth of March, A. D. 1855, an Act was passed creating a Board of Supervisors in the counties of this State. (Wood's Dig., page 692.) Section 25 of that act (Wood's Dig. page 697) reads as follows : " The Board of Supervisors shall have and exercise in its county, *all* jurisdiction and powers, other than criminal, conferred by *any* law on the Court of Sessions, or heretofore exercised by said Court, under any statute, or by *any statute provided to be exercised* by said Court, when the same does not conflict with the provisions of this Act."

It is impossible to conceive of any provisions of law which could, in terms and evident intention, more completely turn over to the Board of Supervisors *all* authority, other than criminal, which had been attempted to be given to the Court of Sessions, and I cannot see how appellant expects to except the law of March 6th from the operation of that section. By it certain powers were, or were attempted to be, conferred on the Court of Sessions ; or at least it is included in that clause which confers upon said Board " all jurisdiction and power," " *by any statute provided to be exercised by said Court.*" The law of March 6th, 1854, was upon the statute book at the time of the passage of the Act last cited, and as it concerned the public funds, must

be deemed to have been in contemplation of the Legislature at the time of the passage of said last Act.    Any other construction must say that the Legislature intended to cancel or withdraw the Act of the year before, and impliedly repeal said Act of March 6th, 1854. Or, if the Legislature intended in good faith to stand by the release they had granted, it would compel them to pass a special Act authorizing another party to place the release formally upon the record.

If, then, the power given to the Court of Sessions by the Act of March 6th, 1854, was given to the Board of Supervisors by the Act of March 20th, 1855, then the Board of Supervisors might make such release, whether the money belonged to the State or county.

BALDWIN, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The judgment in this case being the property of the State, could be released by the Legislature in such form and on such conditions as it chose to prescribe.    Whether the Court of Sessions could constitutionally exercise the power of making this release, it is not necessary to inquire, though, if it chose to act in the matter, it is not easy to see why its discharge of a mere ministerial function of this sort would not be valid.    But by the statute of 1855, Boards of Supervisors throughout the different counties were constituted, and, by the 25th section of the Act, it is provided that such Board " shall have and exercise in its county all jurisdiction and powers other than criminal, conferred *by any law* on the Court of Sessions, as heretofore exercised by said Court, under any statute or by any statute provided to be exercised by said Court, where the same does not conflict with the provisions of this Act."

It was evidently intended by this statute to transfer from the Courts of Sessions to the Boards of Supervisors the general and special powers and duties of a civil character which had before the Act been vested in the former Courts.    It was not the design, in this manner, to repeal any law, general or special, before existing ; but as, under the decision of Burgoyne *v.* The Supervisors, (in 5 Cal.) a question of the constitutionality of those laws which conferred duties and powers, not of criminal cognizance, was made, the Legislature meant to remove

the difficulty by transferring all these functions to the Boards of Supervisors. The language of the Act is so express as to leave no doubt that this particular power was meant to be included.

It is said that the Act for the relief of Bircham did not sufficiently define this particular recognizance. But this was a question of identity, and we think the Court below was well warranted in its finding.

It is also urged that the Act of 1854 was void, because the Court of Sessions could not constitutionally exercise the function committed to it, and, therefore, the general Act of 1855, already quoted from, transferring the powers before given by law to the Courts of Sessions to the Boards of Supervisors, is not to be construed to embrace such powers. But this would do away with the whole effect in this respect of the Act of 1855 ; for all the Acts giving these civil powers to the Court of Sessions are exposed to the same objection. We do not see, however, why the Legislature may not use or refer to an Act unconstitutional in itself to indicate its will in respect to a constitutional purpose. The question is, at least, a question of legislative intent, and this intent may be accomplished by a reference to an unconstitutional Act, as a means of giving or transferring a power. This was very clearly done by the Act of 1855, which referred to these Acts, not for the purpose of giving them validity as they stood, but for the purpose of divesting these Acts of their supposed unconstitutional features, and lodging the same powers in different hands. This is not to validate void Acts, but to make Acts, void because the powers were misplaced, valid for the future, by placing those powers in constitutional hands. It seems to us that this suggestion is an answer to the argument, even upon the very liberal concession that the Act of 1854 was unconstitutional—a concession made only for the convenience of the argument.

The objection that the District Attorney had a claim of ten per cent. on the amounts collected in such cases, and therefore the Legislature could not release the debt, cannot be sustained. There is no difference in this respect between a private litigant and the Government in such cases, and the question has been settled in cases of individual litigation. If, however, the District Attorney has any claim, when no money is collected on a judgment of this kind, this does not prevent a settlement of this controversy or a release of the claim by the Government, leav-

ing the Attorney his claim on the conscience of the Government for remuneration, in cases where he has rendered all the services, and is only prevented by the action of the Government from collecting the debt.

Nor do we consider that there is anything in the point, that the action of the Board of Supervisors was not complete. The record of the proceedings of the Board, under the seal of the Board, was sufficient evidence, until directly impeached, of what they import, or, at the least, we do not see any fatal error in the Court below, under the circumstances, giving credence to this proof.

The judgment is affirmed.